O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| GEORGE HOWARD CLAY, | § | |
| | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION V-05-12 |
| | § | |
| DOUGLAS DRETKE, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM & OPINION**

In this habeas corpus action, Texas prisoner George Howard Clay ("Clay") challenges the result of two prison disciplinary proceedings. Pending before the Court is Respondent Douglas Dretke's Motion for Summary Judgment (Dkt. #7). Also pending before the Court is Clay's Motion for Sanctions (Dkt. #14). After considering the motion, the response, and the applicable law, the Court is of the opinion that Respondent's motion should be GRANTED and Clay's motion should be DENIED.

**I.    Factual and Procedural Background**

At the time of the challenged proceeding, Clay was an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") serving two concurrent 40-year sentences after pleading guilty to delivery of a controlled substance in two cases. *The State of Texas v. George Howard Clay*, Nos. 93-1-15,109-A and 93-1-15,110-A (24th Judicial Dist. Ct., Victoria County, Tex., Mar. 31, 1993).

On September 18, 2004, Clay was notified that he was charged with possession of contraband, a Level 2, Code 16 offense. Disciplinary Case # 20050017726. Specifically, Clay was charged with possession of "contraband, namely, stamps, (23) greeting cards and (3) pages torn from

a book." On that same day, Clay was found guilty of the disciplinary violation. As a result, the hearing officer assessed the following punishments: (1) thirty days loss of recreation and commissary privileges; and (2) contact visits suspended for sixty days. Clay appealed the decision on September 26, 2004, which was subsequently denied on October 13, 2004. Clay filed a second appeal on October 18, 2004, which was subsequently denied on November 10, 2004.

On October 4, 2004, Clay was notified that he was charged again with possession of contraband, a Level 2, Code 16 offense. Disciplinary Case # 20050035489. Specifically, Clay was charged with possession of "contraband, namely, two soups, nine oatmeal pies, two hot sauce (sic), one toothpaste, two deodorants, one hair food, two crackers, one chips, two waffers (sic), and two boxes of oatmeal, and one hot chocolate mix." On October 6, 2004, Clay was found guilty of the disciplinary violation. As a result of this offense, the hearing officer imposed the following punishments: (1) 45 days loss of recreation and commissary privileges; (2) 15 days of solitary confinement; (3) reduction in line class status from S-3 to L-1; and (4) 30 days loss of good time credit. Clay appealed the decision on October 7, 2004 which was subsequently denied on October 18, 2004. Clay filed a second appeal on October 27, 2004, which was later denied on November 18, 2004. Clay filed the instant petition for writ of habeas corpus on January 26, 2005.

**II.     Claims and Allegations**

In his habeas petition, Clay claims he is entitled to habeas relief based upon three grounds: (1) the evidence was insufficient to support a guilty finding; (2) he was denied "fair notice" of the contraband rule; and (3) the disciplinary cases were filed in retaliation because he initiated a civil rights suit for another inmate.

**III.     Analysis**

    **A.     Disciplinary Case Number 20050017726**

Clay may not seek relief in this proceeding to the extent that he challenges the validity of the loss of privileges which affected the conditions of his confinement without affecting the length of his sentence. In order to obtain habeas relief, a prisoner must establish a violation of a constitutional right. *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994). "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S. Ct. 2293 (1995). Any claims concerning loss of recreation and commissary have no basis in law as such punishments are not actionable in federal court because Clay is a prisoner with limited rights and expectations. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

    With respect to Clay's loss of privileges and the temporary suspension of his contact visits, the withdrawal of permission to engage in prison activities that are not available to all prisoners is merely a change in the conditions of confinement and therefore cannot be challenged in this proceeding. *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Madison*, 104 F.3d at 767-68; *see also Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (holding visitation privileges are a matter subject to the discretion of prison officials and that there is no constitutional right to visitation privileges). Moreover, habeas challenges are limited to those actions that actually affect the length of a prisoner's incarceration. *See Malchi*, 211 F.3d at 958 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S. Ct. 1827 (1973)). Accordingly, Clay's claims regarding loss of recreation and commissary privileges and loss of contact visitation privileges fail to state a claim that entitles him to federal habeas corpus relief.

**B.      Disciplinary Case Number 20050035489**

**1.      Loss of Privileges**

To the extent Clay challenges the loss of recreation and commissary privileges, solitary confinement, and the reduction in his line classification, Clay has failed to demonstrate an actionable constitutional violation. As discussed above, the loss of recreation and commissary privileges is merely a change in the conditions of confinement and does not actually affect the length of a prisoner's incarceration. *See Malchi*, 211 F.3d at 958.

Respecting the imposition of a total of 30 days of solitary confinement, absent extraordinary circumstances, administrative segregation is an incident to the ordinary life as a prisoner and will never be a ground for a constitutional claim. *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996); *see also Sandin*, 115 S. Ct. at 486 (1995) (holding that no liberty interest was implicated by discipline in segregated confinement).

Similarly, Clay's challenge to his demotion in classification is legally baseless. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Although the demotion may have affected Clay's ability to accrue good time credits, it is not actionable because there is no certainty that the length of his confinement was changed. *Sandin*, 115 S. Ct. at 2302. *See also Malchi*, 211 F.3d at 957 (effect on prisoner's good time earning status upon timing of release was too speculative to afford constitutionally cognizable right).

**2.      Loss of Good Time Credits**

As the Respondent concedes that Clay was eligible for mandatory supervision,[1] Clay may seek relief with regard to the good time credits which were actually forfeited as a result of the

---

[1] Resp't Mot. for Summ. J., pg. 1.

disciplinary proceeding in case number 20050035489. *See Malchi*, 211 F.3d at 957.

### a. Procedural Due Process

Unlike a defendant in a criminal trial, a prisoner in a disciplinary proceeding has limited due process rights. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). These rights are met when the prison officials "(1) provide advance written notice of at least twenty-four hours to the prisoner; (2) issue a written statement of the factfinders as to evidence relied upon and their reasons for action; and (3) offer the prisoner an opportunity to call witnesses and present documentary evidence." *Houser v. Dretke,* 395 F.3d 560, 562 (citing *Wolff*, 418 U.S. at 563-68, 94 S. Ct. at 2978-80).

With regard to disciplinary case number 20050035489, the record shows that Clay was given written notice of the disciplinary hearing on October 4, 2004, at 11:35 a.m.[2] The hearing occurred more than twenty-four hours later, on October 6, 2004.[3] Clay attended the hearing[4] where he was assisted by a counsel substitute.[5] The record demonstrates that Clay was informed of his right to call witnesses and present documentary evidence.[6] He was provided with a final report of the disciplinary hearing stating the evidence relied upon and the reason for the disciplinary action

---

[2] DHR, pg. 1. "DHR" refers to the disciplinary hearing records for both disciplinary actions.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 3.

[6] *Id.*

taken.[7] In light of the foregoing, Clay's claim that he was denied due process must be dismissed with prejudice because due process was observed as mandated by *Wolff*.

### b. Sufficiency of the Evidence

Clay argues that there was insufficient evidence to support the hearing officer's finding of guilt in disciplinary case number 20050035489. In this case, the hearing officer based his guilty finding on the charging officer's report and testimony, Clay's own statement, the case investigation, the evidence presented by Clay, and the Prop-08 form.[8] The charging officer, Thompson, wrote in his report that "during a routine cell search . . . . [t]he offender did not have commissary slips for none of the above mentioned items."[9] Thompson also testified during the hearing that he "was told to do a shakedown and got in there and found some property that didn't have any property receipts."[10] Also, at the hearing Clay asked Thompson "[a]re you the one person who confiscated my property."[11] Thompson replied that he was.[12] Further, when Clay's counsel substitute asked Thompson "so you're the one that actually searched his property," Thompson replied "[y]es, I was."[13] Additionally, the hearing officer clearly stated that he based his guilty finding on "[Clay's] statement, the officer's report, the case investigation, the officer's testimony, the evidence [Clay]

---

[7] *Id.* at 1

[8] *Id.*

[9] *Id.* at 5.

[10] Hearing Tape.

[11] *Id.*

[12] *Id.*

[13] *Id.*

presented, and the property 8 form."[14]

The Court holds that the record demonstrates that due process was observed during the hearing as required by *Wolff*. The hearing officer's reliance on the charging officer's report alone would have been sufficient to support his findings. *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768 (1985); *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001); *Earnest v. Courtney*, 64 F.3d 365, 367 (8th Cir. 1995). The Supreme Court has held that "due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Superintendent,* 472 U.S. at 457, 105 S. Ct. at 2775. In light of the facts, the hearing officer's rulings will not be disturbed. *Cf. Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

### c.    "Fair Notice" of the Contraband Rule

Next, Clay asserts that the prison officials violated his constitutional rights by failing to give him fair notice of the contraband rule before he received his punishment. The Court agrees with Respondent that this claim is entirely specious. On April 19, 2004, months before the charges brought against him under the challenged disciplinary proceeding, Clay was found guilty of possession of contraband in disciplinary case number 20040236206.[15] Thus it is apparent that Clay did in fact have fair notice of the contraband rule.

Moreover, however, Clay's claim fails to state a claim amenable to habeas relief because habeas corpus review is unavailable for the vindication of rights existing solely under the rules of state procedure or, as in this case, administrative procedure. *See Myers v. Klevenhagen*, 97 F.3d 91,

---

[14] *Id.*

[15] DHR at 10.

94 (5th Cir. 1996) (holding that sheriff department's failure to follow its own administrative rules and regulations does not raise federal constitutional issues as long as minimum constitutional requirements are met); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (failure of prison officials to follow their own rules does not establish a constitutional violation); *Iruegas-Maciel v. Dobre*, 67 Fed. Appx 253, 253 (5th Cir. 2003) (noting the rule's application in the habeas context). Clay also claims that he did not have notice that his release date could be extended. However, "ignorance of the law is not excuse," even for an "incarcerated pro se petitioner." *See Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). Clay's notice claim is entirely without merit and he is not entitled to habeas relief on that ground.

### d.   Retaliation Claim

Clay also asserts that disciplinary case number 20050035489 was filed in retaliation for his "initiating a civil rights lawsuit against [the disciplinary board] for another inmate." Prison officials are prohibited from retaliating against inmates who exercise the right of access to the courts, or who complain of prison conditions or about official misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). Proceedings that are not otherwise constitutionally deficient may be invalidated by retaliatory animus. *Id.* (citations omitted). To prevail on a claim of retaliation, a prisoner must establish the following: (1) the exercise of a specific right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). The Fifth Circuit has cautioned that:

> [t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the

8

>retaliatory motive the complained of incident–such as the filing of disciplinary reports as in the case at bar–would not have occurred. This places a significant burden on the inmate. Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

*Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). Further, claims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Conclusory allegations of retaliation are insufficient to withstand a summary judgment challenge. *Id.* (citing *Richardson v. McDonnell*, 841 F.2d 120, 123 (5th Cir.1988) (upholding summary judgment dismissal of retaliation claim where inmate never offered documentary or testimonial evidence in support of assertions).

Despite Clay's allegations of retaliation, he provides no evidence to support his claims. Clay's claim is conclusory and should be dismissed. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

### e. Additional Arguments Raised by Clay

In Clay's response to Dretke's Motion for Summary Judgment as well as in his three lengthy "Advisor[ies] to the Court, he raises a number of arguments. Clay's arguments are without merit, and the majority of those arguments are frivolous, incoherent, irrelevant and do not entitle him to federal habeas relief. The Court will address briefly a few of these arguments.

First, Clay appears to argue that he is entitled to habeas relief because Respondent filed its Motion for Summary Judgment on March 21, 2005, one day after the Court required the Respondent

to file a dispositive answer.[16] District courts are granted broad discretion to expand filing deadlines. *Hetzel v.. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995). Clay has not demonstrated that he was prejudiced by the late filing and is therefore not entitled to habeas relief on this ground. Second, Clay also appears to complain about the manner in which his parole is being considered by the Texas Board of Pardons and Paroles. This complaint was not one of the grounds upon which he initially sought relief in his habeas petition and he has not sought leave to amend his petition. In any event, his complaints against the parole board are not amenable to habeas relief and have no relevance to his complaints regarding his disciplinary proceedings. The remainder of Clay's arguments do not entitled him to habeas relief. Based upon the foregoing, Clay's unfounded challenges to the results of his disciplinary proceeding shall be **DISMISSED**.

    **C.**    **Clay's Motion for Sanctions**

Clay has also moved the Court to sanction the Texas Board of Pardons and Paroles pursuant to Rule 11 of the Federal Rules of Civil Procedure because it failed to respond to Clay's requests for discovery. As the Texas Board of Pardons and Paroles is not a party to this lawsuit, the Court will not impose sanctions upon it.

### Certificate of Appealability

Under 28 U.S.C. § 2253, Clay needs to obtain a certificate of appealability before he can appeal this Memorandum & Opinion dismissing his petition. A certificate of appealability may be issued only if Clay makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2); *Williams v. Puckett*, 283 F.3d 272, 276 (5th Cir. 2002). To make such a showing, Clay must demonstrate that the issues are debatable among jurists of reason; that a court could

---

[16] *See* Dkt. #4.

resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.  *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998); *see also Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004).  For the reasons stated in this Memorandum & Opinion, Clay has not made a substantial showing of the denial of a constitutional right.  *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996); 395 F.3d at 561.  The Court **DENIES** the issuance of a certificate of appealability in this action.

### Conclusion

The Court **ORDERS** the following:

1. Respondent's Motion for Summary Judgment (Dkt. #7) is **GRANTED**.

2. Clay's Motion for Sanctions (Dkt. #14) is **DENIED**.

3. This action is **DISMISSED**.

4. A certificate of appealability is **DENIED**.

**SIGNED** on this 13th day of December, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE